UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ASHLEY SPARKS,<br><br>Plaintiff,<br><br>vs.<br><br>CHILD AND PARENT SERVICES, INC. d/b/a CAPS,<br>Defendant. | ) | Case No. 3:25-cv-00493 |

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff Ashley Sparks ("Ms. Sparks" or "Plaintiff"), by counsel, hereby files her *Complaint and Jury Trial Demand* (the "Complaint") against Defendant Child and Parent Services, Inc. d/b/a CAPS ("CAPS," the "Company" or "Defendant"). In support of her Complaint, Plaintiff states as follows:

**INTRODUCTION**

1. This is an action brought by Plaintiff against Defendant, between which parties there is a former employment relationship. Plaintiff brings this action against Defendant for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et. seq*. ("Title VII"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et. seq*. ("ADA") and under the law of the State of Indiana for a claim of intentional interference with a contract.

**PARTIES**

2. Plaintiff is a resident of St. Joseph County, Indiana.

3. At all times relevant, Plaintiff was an employee as defined by Title VII and the ADA.

4. At all times relevant, Defendant was an employer as defined by Title VII and the ADA.

5. According to information maintained by the Indiana Secretary of State, Defendant is a domestic non-profit corporation with its principal office located at 1000 W. Hively Ave., Elkhart, IN 46517.

6. According to information maintained by the Indiana Secretary of State, Defendant's registered agent is Rebecca Shetler Fast, 1000 West Hively Avenue, Elkhart, IN 46517.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claim arising out of Indiana law pursuant to 28 U.S.C. § 1367.

8. The alleged discriminatory and unlawful acts were committed within the jurisdiction of the United States District Court for the Northern District of Indiana, South Bend Division.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(b)(2), which allows for an action to be brought in the district where the Defendant resides or in which the cause of action arose.

## ADMINISTRATIVE EXHAUSTION

10. Plaintiff exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

11. On February 14, 2023, Plaintiff filed EEOC Charge No. 470-2023-01964 (the "First Charge").

12. On July 14, 2025, Plaintiff filed EEOC Charge No. 470-2024-04872 (the "Second Charge").

13. On or around March 6, 2025, the EEOC issued a Dismissal and Notice of Rights to Plaintiff for the First Charge. A true and correct copy of the Dismissal and Notice of Rights is attached hereto as **Exhibit 1**.

14. On or around March 25, 2025, the EEOC issued a Dismissal and Notice of Rights to Plaintiff for the Second Charge. A true and correct copy of the Dismissal and Notice of Rights is attached hereto as **Exhibit 2**.

15. Plaintiff's civil action is being initiated within ninety (90) days of her receipt of the EEOC Dismissal and Notice of Rights for the First Charge.

## GENERAL FACTUAL ALLEGATIONS

***Plaintiff's Role with Defendant***

16. In or around May 2022, Plaintiff began working with Defendant through a staffing agency in the role of Human Resources Director.

17. On July 11, 2022, Defendant hired Plaintiff for the role of Human Resources Director.

18. As the Human Resources Director for Defendant, Plaintiff managed the Human Resources Department ("HR Department"), front office, building and custodial departments.

19. Plaintiff initially reported to Nicholle Probst ("Probst"), the interim Chief Executive Officer ("CEO").

20. In or around August 2022, Plaintiff began reporting to Rebecca Shetler Fast ("Shetler Fast"), Defendant's newly hired President and CEO who replaced Probst in her interim CEO role.

21. Throughout the time that Plaintiff reported directly to Shetler Fast, Shetler Fast consistently praised Plaintiff's performance.

22. When Plaintiff began in her position, Defendant's HR Department was essentially defunct.

23. During Plaintiff's five (5) months of employment with Defendant, she turned the HR Department around, for instance, by creating and implementing a number of systems and procedures, among other things.

24. As the HR Director, Plaintiff was also responsible for investigating workplace complaints, including complaints of workplace discrimination.

25. On October 7, 2022, at approximately 11:30 am, Plaintiff had an exit interview with a black employee who had submitted her resignation (the "Resigning Employee").

26. During the exit interview, the Resigning Employee complained to Plaintiff about race discrimination in Defendant's Healthy Families Department, which was the department where the Resigning Employee had worked.

***Plaintiff Reports Complaints of Race and Disability Discrimination***

27. At 12:45 pm on October 7, 2022, Plaintiff met with Ellen Graber-McCrae ("Graber-McCrae"), Senior Director, and Tanya Machek ("Machek"), Healthy Families Director, to report the race discrimination complaint that she received from the Resigning Employee, along with a second employee who had complained about race discrimination in the Healthy Families Department.

28. During the same conversation, Plaintiff also addressed a third employee's complaint regarding disability discrimination.

29. Plaintiff extended the meeting so that she could continue speaking with Graber-McCrae about the seriousness of the complaints that she was reporting.

30. At the conclusion of the meeting, Plaintiff made certain recommendations to Graber-McCrae on how to approach and handle the reported complaints.

***Defendant Retaliates Against Plaintiff for Reporting Race and Disability Discrimination***

31. Plaintiff was scheduled to be out of the office Monday, October 10 through Friday, October 14, 2022, on Paid Time Off ("PTO"), but she agreed to work a hybrid schedule.

32. That week Plaintiff was supposed to have a meeting with Graber-McCrae and Machek to discuss the discrimination complaints that Plaintiff reported.

33. However, Graber-McCrae and Machek met without Plaintiff.

34. On October 10, 2022, Machek emailed Plaintiff and told Plaintiff that she met with Shetler Fast, Probst, and Graber-McCrae regarding the October 7, 2022, conversation with Plaintiff.

35. Machek told Plaintiff that they would not follow Plaintiff's recommendations on how to approach and handle the discrimination complaints.

36. On October 11, 2022, at approximately 3:00 pm, Plaintiff met with Graber-McCrae, Probst, Machek and Shetler Fast regarding the race and disability discrimination complaints she reported.

37. During the October 11 meeting, Probst was very aggressive toward Plaintiff and had also behaved the same way in an earlier meeting that day.

38. During the week of October 13, 2022, Shetler Fast again praised Plaintiff's performance.

39. Shetler Fast was out of the office the week of October 17 to 24, 2022.

40. On October 18, 2022, Probst sent Plaintiff a lengthy, and factually incorrect email that Plaintiff saw just minutes before walking into an administrative meeting.

41. On October 19, 2022, Plaintiff woke up to multiple emails from Probst accusing her of various infractions. Probst copied Shetler Fast on the emails.

42. Given the increasing level of hostility from Probst, Plaintiff texted Shetler Fast the morning of October 19, 2022, and requested to take a PTO day.

43. In addition, at 9:09 am, Plaintiff texted Shetler Fast the definition of workplace retaliation and various examples of retaliation in the workplace.

44. Plaintiff also texted Shetler Fast that Probst's aggressive behavior towards her started when Plaintiff confronted Probst about the complaints of discrimination she reported.

45. Shetler Fast told Plaintiff that they could meet the following week when Shetler Fast returned to the office.

46. Shetler Fast also asked Plaintiff to prepare notes regarding "retaliation" for the meeting.

47. Shetler Fast then sent Plaintiff a calendar invite for a meeting on Monday, October 24, 2022, at 1:30 pm.

48. Around 1:00 pm on October 24, 2022, Plaintiff bumped into Shetler Fast as she was greeting a person Plaintiff later learned was Angie Goens ("Goens"), who Plaintiff did not know and had never met.

49. Shetler Fast and Goens went into Shetler Fast's office.

50. Plaintiff then left her office and returned at 1:30 pm for her scheduled meeting with Shetler Fast.

51. However, instead of meeting with Shetler Fast, Plaintiff was met at her office door by Goens.

52. Goens then told Plaintiff that she was tasked with the unfortunate job of severing her employment with Defendant.

53. Goens told Plaintiff that she did not "fit" into the environment and breached confidentiality.

54. Goens did not tell Plaintiff which, if any, confidentiality policy she allegedly violated.

55. In addition, Defendant never provided Plaintiff with any disciplinary action or other documentation explaining how she had allegedly breached confidentiality.

56. Goens then asked Plaintiff to sign certain paperwork and when Plaintiff became upset, Goens walked over, stood over Plaintiff and demanded that Plaintiff sign the paperwork.

57. Less than one (1) month after reporting complaints of race and disability discrimination, Defendant terminated Plaintiff's employment.

58. During the termination meeting, Goens told Plaintiff that she could file a grievance and gave Plaintiff a copy of Defendant's Employee Grievance Procedure.

59. On October 24, 2022, Plaintiff emailed Shetler Fast her written grievance regarding retaliation.

60. On October 26, 2022, Goens emailed Plaintiff and told her that she did not follow the grievance policy in submitting her grievance and gave Plaintiff until October 31, 2022, to resubmit it.

61. Plaintiff resubmitted the grievance two (2) more times.

62. On November 2, 2022, Goens told Plaintiff that Defendant was not investigating her grievance due to "noncompliance" with the policy.

***Defendant Also Discriminated Against Plaintiff Because of Her Own Disability***

63. Plaintiff is a qualified individual with a disability.

64. Plaintiff has been diagnosed with an immunological impairment that causes a range of chronic symptoms and has been diagnosed with a disorder of the autonomic nervous system.

65. When Plaintiff started working for Defendant, Plaintiff notified Defendant about her disability in the event that she would need to request a reasonable accommodation at some point in time.

66. Plaintiff asked for flexible arrival and departure times given the nature of her symptoms.

67. Even with this flexibility getting to and leaving the office, Plaintiff performed work duties while at home and at the office.

68. With Plaintiff's flexible arrival/departure, Defendant recorded Plaintiff as working only thirty (30) hours per week, even though Plaintiff consistently worked well over thirty (30) hours per week and still performed all of the job duties performed by the prior HR Director.

69. Plaintiff asked Defendant to adjust the thirty (30) hour workweek as it did not accurately reflect the actual number of hours she was working.

70. Defendant refused Plaintiff's request to adjust the thirty (30) hour workweek.

71. Defendant also cut Plaintiff's starting salary by twenty-five percent (25%) because, according to Defendant, Plaintiff was working less hours than the prior HR Director, which was not true.

72. When Plaintiff stated she was performing all of the same job duties as the prior HR Director and working more than thirty (30) hours a week, Defendant switched its reasoning and stated that the salary cut was because Plaintiff would not be attending the 9:00 am leadership meeting that was held one (1) time a month.

***Post-Employment Retaliation***

73. Following Plaintiff's termination, on February 14, 2023, she filed the First Charge with the EEOC against Defendant.

74. While the First Charge was still pending against Defendant, Plaintiff started a new job with Growing Kids Learning Centers ("Growing Kids") in the role of Human Resources Director ("HR Director").

75. Plaintiff had an at-will employment contract with Growing Kids.

76. At all relevant times, Julie Clarke ("Clarke") was the Chief Operating Officer of Growing Kids.

77. Clarke knew that Plaintiff worked at Defendant prior to her being hired by Growing Kids.

78. Clarke is related to Amy Varga ("Varga"), the President of Defendant's Board of Directors.

79. Defendant knew that Growing Kids employed Plaintiff subsequent to her termination.

80. On or around April 22, 2024, while the First Charge was still pending, Growing Kids terminated Plaintiff's employment.

81. Defendant caused Plaintiff's termination from Growing Kids.

***Miscellaneous Allegations***

82. Plaintiff met or exceeded Defendant's legitimate performance expectations.

83. Defendant retaliated against Plaintiff for opposing Defendant's unlawful race discrimination.

84. Defendant retaliated against Plaintiff for opposing Defendant's unlawful disability discrimination.

85. Defendant discriminated against Plaintiff because she is a qualified individual with a disability.

86. Defendant retaliated against Plaintiff because she filed the First Charge with the EEOC against Defendant following her unlawful termination.

87. Defendant intentionally interfered with Plaintiff's at-will employment contract with Growing Kids.

88. As a result of Defendant's unlawful employment practices, Plaintiff has incurred and will continue to incur lost wages and benefits.

89. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer emotional distress and mental anguish.

90. Defendant's unlawful employment practices were intentional.

91. Defendant's actions were taken with malice or reckless indifference to Plaintiff's rights.

92. Plaintiff is entitled to recover reasonable attorneys' fees and costs.

## COUNT I: TITLE VII RETALIATION

93. All preceding paragraphs are incorporated herein by reference.

94. By the actions described above, Defendant retaliated against Plaintiff because she engaged in protected activity.

95. During Plaintiff's employment, Plaintiff reported employee complaints of race discrimination to Defendant.

96. Defendant engaged in unlawful employment practices by intentionally discriminating against Plaintiff with respect to the terms, conditions, and privileges of employment because Plaintiff reported employee complaints of race discrimination.

97. In less than one (1) month after Plaintiff reported employee complaints of race discrimination, Defendant terminated Plaintiff's employment.

98. The alleged reasons provided to Plaintiff for her termination are pretextual.

99. Defendant's conduct was willful, in that it knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VII.

100. As a direct and proximate cause of Defendant's unlawful retaliation, Plaintiff has suffered and will continue to suffer compensatory damages, including, but not limited to, mental anguish, pain and suffering, humiliation, embarrassment, degradation, and loss of reputation.

101. Plaintiff is entitled to an award of attorneys' fees and costs and other expenses as allowed by law.

## COUNT II: ADA RETALIATION

102. All preceding paragraphs are incorporated herein by reference.

103. By the actions described above, Defendant retaliated against Plaintiff because she engaged in protected activity.

104. During Plaintiff's employment, Plaintiff reported an employee complaint of disability discrimination to Defendant.

105. Defendant engaged in unlawful employment practices by intentionally discriminating against Plaintiff with respect to the terms, conditions, and privileges of employment because Plaintiff reported an employee complaint of disability discrimination.

106. In less than one (1) month after Plaintiff reported an employee complaint of disability discrimination, Defendant terminated Plaintiff's employment.

107. The alleged reasons provided to Plaintiff for her termination are pretextual.

108. Defendant's conduct was willful, in that it knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by the ADA.

109. As a direct and proximate cause of Defendant's unlawful retaliation, Plaintiff has suffered and will continue to suffer compensatory damages, including, but not limited to, mental anguish, pain and suffering, humiliation, embarrassment, degradation, and loss of reputation.

110. Plaintiff is entitled to an award of attorneys' fees and costs and other expenses as allowed by law.

**COUNT III: DISABILITY DISCRIMINATION**

111. All preceding paragraphs are incorporated herein by reference.

112. Plaintiff at all relevant times herein held the requisite skill, experience, education and other job-related requirements of the position she held with Defendant.

113. Plaintiff is a qualified individual with a disability.

114. Plaintiff is disabled within the meaning of the ADA; she has a physical impairment or has a record as having a physical impairment that substantially limits a major life activity.

115. Defendant was aware of Plaintiff's disability.

116. Defendant intentionally discriminated against Plaintiff based on her disability when it failed to compensate her at the same rate or in the same manner as her non-disabled predecessor.

117. Defendant's reasons for failing to compensate Plaintiff at the same rate or in the same manner as her non-disabled predecessor are a pretext for disability discrimination.

118. Plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish unless and until the Court grants relief.

119. Defendant's conduct was willful, in that it knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by the ADA.

120. Plaintiff is entitled to an award of attorneys' fees and costs and other expenses as allowed by law.

**COUNT IV: POST EMPLOYMENT RETALIATION**

121. All preceding paragraphs are incorporated herein by reference.

122. On February 14, 2024, Plaintiff engaged in protected activity by filing the First Charge with the EEOC against Defendant alleging retaliation pursuant to Title VII and the ADA and discrimination pursuant to the ADA.

123. While the First Charge was still pending against Defendant, Plaintiff started a new job with Growing Kids in the role of HR Director.

124. Defendant engaged in unlawful retaliation in violation of Title VII and the ADA by causing Plaintiff's termination from Growing Kids.

125. Defendant engaged in unlawful employment practices by intentionally discriminating against Plaintiff with respect to the terms, conditions, and privileges of her employment with Growing Kids because Plaintiff filed the First Charge.

126. Plaintiff has suffered and will continue to suffer monetary damages unless and until the Court grants relief.

127. Defendant's conduct was willful, in that it knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VII and the ADA.

128. As a direct and proximate cause of Defendant's unlawful retaliation, Plaintiff has suffered and will continue to suffer compensatory damages, including, but not limited to, mental anguish, pain and suffering, humiliation, embarrassment, degradation, and loss of reputation.

129. Plaintiff is entitled to an award of attorneys' fees and costs and other expenses as allowed by law.

## COUNT V: INTENTIONAL INTERFERENCE WITH A CONTRACT

130. All preceding paragraphs are incorporated herein by reference.

131. Plaintiff and Growing Kids had an at-will employment contract.

132. Defendant knew of the existence of Plaintiff's employment with Growing Kids.

133. Defendant intentionally induced Growing Kids to breach its at-will employment contract with Plaintiff.

134. Defendant had no justification to induce Growing Kids to breach its at-will employment contract with Plaintiff.

135. As a result of Defendant's wrongful inducement, Plaintiff has suffered damages to which she is entitled to relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ashley Sparks, by counsel, prays for a judgment in her favor against Defendant Child and Parent Services, Inc. d/b/a CAPS, and respectfully requests that the following relief be awarded:

A. Order Defendant to make Plaintiff whole by paying any and all lost wages and benefits with pre-judgment interest, in an amount to be determined at trial;

B. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial;

C. Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

D. Order Defendant to pay Plaintiff punitive damages for its malicious and/or reckless conduct described above in amounts to be determined at trial;

E. Order Defendant to pay for the costs of this action including reasonable attorneys' fees; and

F. Grant such further relief as the Court deems necessary and proper in the public interest.

**JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*s/Kimberly D. Jeselskis*

Kimberly D. Jeselskis, Attorney No. 23422-49
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, Indiana 46204
Telephone: (317) 220-6290
Facsimile: (317) 220-6291
kjeselskis@jbjlegal.com

*Counsel for Plaintiff Ashley Sparks*